UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ROBIN P., | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
|   v. | )  No.  4:21 CV 1028 JMB |
| | ) |
| KILO KIJAKAZI, | ) |
| Commissioner of Social | ) |
| Social Security Administration, | ) |
| | ) |
|       Defendant. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court pursuant to the Social Security Act, 42 U.S.C. §§ 401, et seq. ("the Act").  The Act authorizes judicial review of the final decision of the Social Security Administration denying Plaintiff Robin P.'s ("Plaintiff") application for disability benefits under Title II of the Social Security Act,  see 42 U.S.C. §§ 401 et seq.  All matters are pending before the undersigned United States Magistrate Judge with the consent of the parties, pursuant to 28 U.S.C. § 636(c).  Substantial evidence supports the Commissioner's decision, and therefore it is affirmed.  See 42 U.S.C. § 405(g).

**I.     Procedural History**

On August 21, 2019, Plaintiff filed an application for disability benefits, arguing that her disability began on July 21, 2019, as a result of rheumatoid arthritis, depression, and anxiety.  (Tr. 90)  After Plaintiff's claims were denied upon initial consideration, she requested a hearing before an ALJ.  On August 24, 2020, Plaintiff appeared at a telephone hearing (with counsel), and testified concerning the nature of her disability, her functional limitations, and her past work.  (Tr. 29-56) The ALJ also heard testimony from VE Delores Gonzalez.  (Tr. 49-55, 268-71)  The VE opined

1

as to Plaintiff's ability to perform her past relevant work, based upon Plaintiff's functional limitations, age, and education.  (Id.)  After considering Plaintiff's testimony and the VE's testimony, and after reviewing the other relevant evidence of record, the ALJ issued a decision on October 9, 2020, finding that Plaintiff was not disabled, and therefore denying benefits.  (Tr. 12-24)

Plaintiff sought review of the ALJ's decision before the Appeals Council.  (Tr. 1-6)  On April 6, 2021, the Appeals Council denied review of Plaintiff's claims, making the October 9, 2020, decision of the ALJ the final decision of the Commissioner.  Plaintiff has therefore exhausted her administrative remedies, and her appeal is properly before this Court.  See 42 U.S.C. § 405(g).

As explained below, the Court has considered the entire record in this matter.  Because the decision of the Commissioner is supported by substantial evidence, it will be affirmed.

## II.     Medical Records

The administrative record before this Court includes medical records concerning Plaintiff's health treatment from January 16, 2019, through June 26, 2020.  The Court has considered the entire record.  The following is a summary of pertinent portions of the medical records relevant to the matters at issue in this case.

### A.     Mercy Hospital Bourbon, Missouri – Dr. David Chalk and Nurse Practitioner Vivian Dudley (Tr. 277-324, 366-406)

From January 16, 2019, to September 9, 2019, Dr. David Chalk treated Plaintiff's ankle fracture at Mercy Hospital, and Nurse Practitioner ("NP") Vivian Dudley treated Plaintiff's depression and anxiety.

During treatment on January 16, 2019, Plaintiff reported specific life events.  NP Dudley diagnosed Plaintiff with situational depression.  On January 30, 2019, Plaintiff returned after

starting Lexapro and Ambien, and reported improvement with her crying spells but not feeling any better. Plaintiff stopped taking Ambien due to side effects. NP Dudley increased Plaintiff's Lexapro dosage.

On February 27, 2019, Plaintiff reported doing better and showing more emotions after increasing her Lexapro dosage. NP Dudley counseled Plaintiff to lose weight and to do daily exercise. During treatment on March 28, 2019, Plaintiff reported improvement with her mood after starting Wellbutrin. NP Dudley counseled on lifestyle modifications, including weight loss and daily exercise.

On July 21, 2019, Plaintiff reported that she injured her ankle while chasing someone during a water fight and falling into a pothole. Examination showed tenderness of Plaintiff's right ankle. An x-ray showed a small fracture and prominent soft tissue swelling. Dr. Lovell Layne directed Plaintiff to use a walking boot, rest her foot, and call orthopedics for an appointment.

During the orthopedics appointment on July 22, 2019, Dr. Chalk treated Plaintiff's ankle pain. Plaintiff denied having any anxiety, depression, or rheumatoid arthritis. Dr. Chalk diagnosed Plaintiff with an ankle sprain and directed her to wear a boot and to stay off work until a follow-up treatment. In follow-up treatment on August 12, 2009, Plaintiff reported improvement but still having some intermittent pain and swelling. Examination showed significant tenderness over the anterior ligament. Dr. Chalk planned on weaning Plaintiff off the boot and keeping her off work due to her swelling and persistent pain. Plaintiff returned on September 9, 2019, for a recheck and reported her ankle was doing better. Examination showed Plaintiff's ankle to be minimally swollen with some tenderness. Dr. Chalk prescribed outpatient physical therapy for range of motion strengthening.

    **B.**    **Arthritis Consultants – Dr. Joseph Stauber** (Tr. 333-65, 424-40)

From February 28, 2019, to May 15, 2020, Dr. Joseph Stauber treated Plaintiff's

rheumatoid arthritis on eight occasions.

On February 28, 2019, Plaintiff presented as a new patient.  Plaintiff reported fatigue, joint pain, and swelling, and history of rheumatoid arthritis with flare-ups.  Plaintiff reported onset of swelling and pain in her hands, ankles, and knees in 2015 and blood work showed positive Rheum factor.  Plaintiff explained that her symptoms improved when she became pregnant, and she stopped taking her medications and treatment for rheumatoid arthritis.  Examination showed Plaintiff's musculoskeletal strength intact and no muscle tenderness.  In his assessment, Dr. Stauber noted Plaintiff had a history of rheumatoid arthritis, and she had arthralgia of multiple sites.  Dr. Stauber prescribed a medication regimen.  A February 28, 2019, radiology image showed mild changes of osteoarthritis of Plaintiff's right hand.

Plaintiff returned on March 29, 2019, and reported ongoing swelling and pain and difficulty walking.  Dr. Stauber assessed Plaintiff with rheumatoid arthritis involving multiple sites with positive rheumatoid factor.  Dr. Stauber adjusted Plaintiff's medication regimen.

On May 29, 2019, Plaintiff returned for follow-up treatment and reported her hand grip giving out and extreme exhaustion.  Dr. Stauber adjusted Plaintiff's medication regimen.  On July 31, 2019, Dr. Stauber's joint examination showed shoulder pain with range of motion, but she had no abnormalities in her hands or wrists.  Dr, Stauber adjusted Plaintiff's medication regimen. Plaintiff reported her hand grip improving and having fatigue, pain, joint swelling, and back pain.

On October 2, 2019, Plaintiff reported ongoing fatigue and hand pain.  While on a cruise, Plaintiff reported becoming diffusely swollen from her face to her legs. Examination showed Plaintiff displayed pain with range of motion in her right shoulder and decreased range of motion in her left shoulder, but no abnormalities in her hands or wrists.  Dr. Stauber continued Plaintiff's medication regimen.  During treatment on November 8, 2019, Plaintiff reported frustration because

of facial breakouts due to medications and stopped taking her medications for two weeks without any change in joint pain but then restarting her medications.  Plaintiff reported having diffuse swelling despite her medications, variable morning stiffness, and flares of pain and swelling.  Examination showed pain only with range of motion in her shoulders but no abnormalities relating to her elbows, wrists, or hands,   Dr. Stauber continued Plaintiff's medication regimen.

On February 14, 2020, Plaintiff reported not experiencing much benefit from Humira and increased joint pain with colder weather.  Examination showed no obvious swelling and normal range of motion and mild pain with extension of her left and the remainder of the joint examination was mostly remarkable.  Dr. Stauber continued Plaintiff's medication regimen.  During treatment on May 15, 2020, Plaintiff reported she stopped taking Humira.  Examination showed mild pain on extension of her left elbow, no obvious swelling, and a normal range of motion in her hands and fingers.  Dr. Stauber advised Plaintiff to stop smoking.

          C.     **Psychological Evaluation – Dr. Melissa Webb** (Tr. 416-20)

On December 5, 2019, Dr. Melissa Webb completed a psychological evaluation.  Plaintiff reported that she could no longer work as a manager because she could not work ten hour days.  Plaintiff indicated that she spends significant time with her sister and grandmother and going out to lunch with her friends.  Plaintiff noted that her activities of daily living include taking her children to school, doing housework, making dinner, helping with homework, and packing lunches.

Dr. Webb found that Plaintiff would have moderate long-term improvement in psychological functioning if she continued to receive outpatient psychological treatment.

          D.     **Mercy Services Sullivan – Nurse Practitioner Krystle Reed** (Tr. 442-548)

From October 8, 2019, to June 26, 2020, Nurse Practitioner Krystle Reed treated Plaintiff.

5

On October 8, 2019, Plaintiff presented with a chief complaint of a thirty to forty pound weight gain since January after she started treatment for rheumatoid arthritis. Plaintiff reported trying to diet and exercise without improvement. NP Reed opined that Plaintiff's weight gain may be due to her auto-immune condition and/or medications and counseled Plaintiff to stop smoking. On December 6, 2019, Plaintiff reported having low back agitation and urinary pain. NP Reed counseled Plaintiff on lifestyle modifications, including weight loss and daily exercise.

In follow-up treatment on January 8, 2020, Plaintiff returned for a weight check after starting Phentermine and reported losing sixteen pounds. Plaintiff refused to share her physical activities. On June 26, 2020, Plaintiff complained of urinary pain. NP Reed diagnosed Plaintiff with acute cystitis and prescribed Cipro.

### III. **Opinion Evidence – Function Report and Third Party Letter** (Tr. 192-99, 260-61)

In a Function Report - Adult, Plaintiff reported her daily activities include taking her daughter to school, fixing lunch and dinner, straightening the house, taking naps, paying bills, and helping with homework. Plaintiff also reported taking care of her husband and children with her oldest daughter's assistance. Plaintiff reported having a valid driver's license and being able to drive, to shop at the grocery store, and to pay the bills.

In a Third Party Letter, Plaintiff's oldest daughter outlined how her mother's disease impacted her day-to-day life. The daughter reported that her mother's rheumatoid arthritis had worsened and during a flare-up, she had to help her mother bathe and dress, do the laundry, take care of her younger siblings, and prepare meals. The daughter reported living at home with her family to help care for her mother during rheumatoid arthritis flare-ups.

### IV. **The Hearing Before the ALJ**

The ALJ conducted a telephone hearing on August 24, 2020. Plaintiff participated in the

6

telephone hearing with an attorney and testified at the hearing. The VE also testified at the telephone hearing.

### A. Plaintiff's Testimony

Plaintiff testified that she lives with her husband and three children, ages 22, 14, and 4. (Tr. 35) Plaintiff explained that on a good day, she can care for herself but during a flare-up, she needs her daughter's assistance. (Id. at 36)

Plaintiff last worked part time in November 2019, as a restaurant manager, and before that she worked on an assembly line putting components together. (Id. at 38, 42) Plaintiff explained that she worked part time, three days a week because she was undergoing chemotherapy injections. (Id. at 43)

Plaintiff testified how her flare-ups impact different parts of her body. (Id. at 44) She explained that sometimes she cannot lift her leg, move her arm, or grasp anything with her hands, and she experiences flare-ups with pain twice a week, lasting from one to three days. (Id. at 45) Plaintiff testified that doing yardwork like pulling weeds, or sweeping or mopping the house can trigger a flare-up. (Id. at 46) Plaintiff testified that, during a flare-up, she has to limit the amount of work she does and take multiple breaks between what she is doing, and she cannot grasp anything or write with a pen. Sometimes Plaintiff soaks in an Epsom salt bath to relieve the swelling, and other times, she lies down in bed with ice packs. Plaintiff testified that medication sometimes provides relief.

### B. The VE's Testimony

The VE identified Plaintiff's past work as a bonder (assembler), a waitress, a delicatessen counter worker, a restaurant manager, and a dishwasher. (Id. at 50-51)

7

## V.     The ALJ's Decision

In a decision dated October 9, 2020, the ALJ determined that Plaintiff was not disabled under the Social Security Act. (Tr. 15-24)

The ALJ determined that Plaintiff had severe impairments of rheumatoid arthritis, osteoarthritis, and obesity. (Id. at 18) The ALJ determined that Plaintiff had a residual functional capacity ("RFC") to perform a reduced range of light work with the following modifications: (1) she can never climb ladders, ropes, or scaffolds but she can frequently climb ramps and stairs; (2) she can frequently handle and finger bilaterally and frequently reach in all directions bilaterally; and (3) she must avoid any exposure to unprotected heights or hazardous machinery and only occasionally have exposure to extreme cold or vibration. (Id. at 20-23)

The ALJ noted that Plaintiff "alleges that she suffers from arthritis that cause[s] her to experience flares that last 1-3 days, and during that time, she reports problems using her hands including difficulties grabbing things and writing." (Id. at 21) The ALJ considered Plaintiff's activities of daily living, including cooking, driving, managing her financial matters, completing household chores (laundry and vacuuming), grocery shopping weekly, and taking her daughter to school and helping her with homework. The ALJ noted that Plaintiff's daily activities and exhibited behavior were inconsistent with her allegations of disabling symptoms and limitations. (Id.)  Likewise, the ALJ noted how the medical evidence failed to provide strong support for Plaintiff's allegations of disabling limitations.

The ALJ identified that Plaintiff's past relevant work as a restaurant manager and a bonder. The ALJ found, based on the VE's testimony, that Plaintiff could perform the demands of her past relevant work. (Id. at 24) Therefore, the ALJ found that Plaintiff was not under a disability within the meaning of the Social Security Act.

8

The ALJ's decision is discussed in additional detail below.

## VI.     Standard of Review and Legal Framework

"To be eligible for … benefits, [Plaintiff] must prove that she is disabled …." Baker v. Sec'y of Health and Human Servs., 955 F.2d 552, 555 (8th Cir. 1992); see also Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001).  Under the Act, a disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c (a)(3)(A).  A plaintiff will be found to have a disability "only if her physical or mental impairment or impairments are of such severity that she is not only unable to do her previous work but cannot, considering her age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) and 1382c(a)(3)(B).  See also Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

"To receive disability benefits, [Plaintiff] must establish a physical impairment lasting at least one year that prevents her from engaging in any gainful activity." Kelley v. Callahan, 133 F.3d 583, 587 (8th Cir. 1998).

Per regulations promulgated by the Commissioner, 20 C.F.R § 404.1520, "[t]he ALJ follows 'the familiar five-step process' to determine whether an individual is disabled…. The ALJ consider[s] whether:  (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work." Martise v. Astrue, 641 F.3d 909, 921 (8th Cir. 2011) (quoting Halverson v. Astrue, 600 F.3d 922, 929 (8th Cir. 2010)). See also Bowen, 482 U.S. at 140-42 (explaining the five-step process).

9

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (quoting Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). The ALJ's findings should be affirmed if they are supported by "substantial evidence" on the record as a whole. See Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008); see also Wildman v. Astrue, 596 F.3d 959, 965 (8th Cir. 2010) (same).

Despite this deferential stance, a district court's review must be "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision." Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998). The district court must "also take into account whatever in the record fairly detracts from that decision." Id. Specifically, in reviewing the Commissioner's decision, a district court is required to examine the entire administrative record and consider:

1. The credibility findings made by the ALJ.
2. The claimant's vocational factors.
3. The medical evidence from treating and consulting physicians.
4. The claimant's subjective complaints relating to exertional and non-exertional activities and impairments.
5. Any corroboration by third parties of the claimant's impairments.
6. The testimony of vocational experts, when required, which is based upon a proper hypothetical question which sets forth the claimant's impairment.

Stewart v. Sec'y of Health & Human Servs., 957 F.2d 581, 585-86 (8th Cir. 1992) (citation omitted).

Finally, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance.  Id.; see also McNamara v. Astrue, 590 F.3d 607, 610 (8th Cir. 2010) (explaining that if substantial evidence supports the Commissioner's decision, the court "may not reverse, even if inconsistent conclusions may be drawn from the evidence, and [the court] may have reached a different outcome").

## VII.  Analysis of Issue Presented

In her brief to this Court, Plaintiff raises one point of error, that the ALJ erred in discrediting her subjective complaints related to her rheumatoid arthritis flare-ups, an exacerbation in her symptoms resulting in a significant impact on her ability to perform work-related activities. In particular, Plaintiff argues that the ALJ failed to consider the cyclical nature of her rheumatoid arthritis flare-ups.  In response, Defendant argues that the ALJ properly evaluated Plaintiff's subjective complaints related to her rheumatoid arthritis flare-ups.

As for Plaintiff's subjective complaints regarding rheumatoid arthritis flare-ups, the ALJ fully considered these complaints and discounted them for the following reasons:

> [Plaintiff] alleges that she suffers from arthritis that cause her to experience flares that last 1-3 days, and during that time, she reports problems using her hands [,] including difficulties grabbing things and writing.…  In order to attempt to relieve her pain, she soaks in a bath, applies ice packs, and doubles up on her prescription medications. Additionally, [Plaintiff] specifically endorsed problems in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, and using her hands among other items.  She reported needing help taking a bath at times, sometimes using the toilet, and putting her hair up.  Despite these allegations, [Plaintiff] remains able to participate in many typical activities, including cooking, driving, managing her financial matters, completing household chores (laundry, vacuuming), shopping weekly in stores, and taking her daughter to school and helping her with her homework.…  Here, [Plaintiff] has described

11

>daily activities and exhibited behavior inconsistent with her allegations of disabling symptoms and limitations.
>
>In addition to [Plaintiff's] statements and activities, the medical evidence of record fails to provide strong support for her allegations of entirely disabling limitations.

(Tr. 21)

A claimant's subjective complaints may be discounted if they are inconsistent with the evidence as a whole. Casey v. Astrue, 503 F.3d 687, 695 (8th Cir. 2007). The Eighth Circuit requires that an ALJ consider the following factors when assessing a claimant's subjective complaints:  1) the claimant's daily activities; 2) the duration, intensity, and frequency of the pain; 3) precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. Finch, 547 F.3d at 935 (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1994)). The ALJ is in the best position to gauge subjective complaints and is granted deference in that regard as long as she explicitly discredits a claimant's subjective testimony and gives good reason for doing so. Jones v. Kijakazi, 2022 WL 888139, at *5 (E.D. Mo. Mar. 25, 2022).

Here, the ALJ provided several reasons for her finding that Plaintiff's "statements concerning the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence…." (Tr. 21) The ALJ cited to a July 19, 2019, record in which Dr. Stauber's examination showed Plaintiff had pain with range of motion of her right shoulder and decreased range of motion in her left shoulder, but she had no abnormalities with regard to her hands or wrists. On October 2, 2019, Plaintiff reported having gone on a cruise and experiencing a good deal of swelling after returning. During treatment on November 8, 2019, Plaintiff complained of morning stiffness but she reported the stiffness lasting a few hours at worst.

12

Dr. Stauber's physical examination showed only pain with range of motion of her shoulders and crepitus with range of motion of her knees, but no abnormalities relating to Plaintiff's elbows, wrists, or hands.  In follow-up treatment on February 14, 2020, Plaintiff reported having some mild swelling and occasional acute episodes of left hip weakness with pain, but she denied having any swelling of her hands.  Except for discomfort with range of motion of her shoulders and pain with extension of her right wrist, Dr. Stauber's examination was mostly unremarkable.  Dr. Stauber's May 15, 2020, treatment note was largely unremarkable, showing no obvious swelling and a normal range of motion of Plaintiff's hands and fingers and mild pain with extension of her left elbow.

The undersigned notes that the medical evidence fails to show Plaintiff experienced flare-ups of her rheumatoid arthritis on a regular basis.  The ALJ must consider the absence of objective medical evidence in support Plaintiff's subjective pain complaints, although the ALJ may not discount a plaintiff's subjective complaints solely because they are unsupported by objective medical evidence.  Grindley v, Kijakazi, 9 F.4th 622, 630) (8th Cir. 2021) ("[A]n ALJ is entitled to make a factual determination that a [c]laimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary) (internal citation omitted).  See also Goff v. Barnhart, 421 F.3d 785, 792-93 (8th Cir. 2005) (ALJ properly considered unremarkable or mild objective findings as one factor in assessing subjective complaints.).

Plaintiff's daily activities can also be considered as inconsistent with her subjective complaints of a disabling impairment, and may be considered by the ALJ in judging the subjective complaints.  Estes v. Kijakazi, 2022 WL 782299, at * 6 (E.D. Mo. Mar. 15, 2022).  See also Eichelberger v. Barnhart, 390 F.3d 584, 590 (8th Cir. 2004) (holding that the ALJ properly considered that the claimant watched television, read, drove, and attended church in

concluding that subjective complaints of pain were not credible).

Citing Plaintiff's testimony and function report, the ALJ noted that Plaintiff cooked, drove, managed her financial matters, completed household chores (laundry, vacuuming), shopped weekly in stores, and drove her daughter to school and helped her with her homework. (Tr. 21)  The ALJ specifically found Plaintiff could still participate in many activities of daily living and reported having gone on a cruise and experiencing swelling after she returned.  See Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004) (no error in partially discrediting claimant's testimony where depressive disorder did not markedly impair her ability to perform the usual activities of daily living).  Substantial evidence supports the ALJ's finding that Plaintiff's daily activities are inconsistent with her allegations of disabling symptoms. The undersigned finds therefore, that the ALJ properly considered Plaintiff's daily activities as another factor that weighed against Plaintiff's subjective complaints.

As discussed, the ALJ pointed out inconsistencies in the record that tended to militate against Plaintiff's sworn hearing testimony.  Those included her hearing testimony being inconsistent with what she reported as her activities of daily living and the objective medical evidence.  The record shows that Plaintiff failed to report having flare-ups during medical treatment anywhere comparable to her hearing testimony.  For example, Plaintiff's hearing testimony regarding having flare-ups, lasting one to three days, and soaking a bath, applying ice packs, and doubling up on her prescription medications to relieve her pain, is not documented in the medical record.  The absence of objective medical basis to support Plaintiff's subjective descriptions is an important factor when evaluating those complaints.  See Barratt v. Shalala, 38 F.3d 1019, 1022 (8th Cir. 1994) (the absence of an objective medical basis to support claimant's subjective complaints is an important factor in evaluating her complaints).

The undersigned finds that the ALJ considered Plaintiff's subjective complaints on the basis of the entire record before her and set out the inconsistencies on the record as a whole. While there is evidence to support a contrary result, the ALJ's determination is supported by substantial evidence on the record as a whole. "It is not the role of [the reviewing] court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." Wiese v. Astrue, 552 F.3d 728, 730 (8th Cir. 2009) (citation omitted). Accordingly, the ALJ was justified in discounting Plaintiff's subjective complaints due to the inconsistencies between Plaintiff's sworn testimony and the objective medical evidence. See VanVickle v. Astrue, 539 F.3d 835, 828 (8th Cir. 2008) ("An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole.").

Finally, the undersigned notes that no treating or examining source ever indicated that Plaintiff was disabled or unable to work or imposed functional limitations on Plaintiff's capacity for work. See Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2009) (significant that no examining physician submitted medical conclusion that claimant is disabled or unable to work); Edwards v. Secretary of Health & Human Servs., 809 F.2d 506, 508 (8th Cir. 1987) (examining physician's failure to find a disability a factor in discrediting subjective complaints). Plaintiff's treating sources never placed any meaningful restrictions on Plaintiff. To the contrary, doctors encouraged Plaintiff to be more physically active. Indeed, Plaintiff reported injuring her ankle while chasing someone during a water fight and experiencing diffuse swelling after going on a cruise.

The ALJ also considered and found generally persuasive the opinions of State agency reviewers who found Plaintiff able to work at the light exertional level with additional limitations which were mostly consistent with the record as a whole, including physical examinations documenting only some mild abnormalities. (Tr. 23)

15

While Plaintiff argues that the ALJ failed to consider the cyclical nature of her rheumatoid arthritis flare-ups, the ALJ cited numerous treatment notes where Plaintiff had generally normal examinations.  The ALJ's decision does not reflect that she ignored the cyclical nature of Plaintiff's rheumatoid flare-ups, but rather, she found Plaintiff's subjective complaints and statements concerning the intensity, persistence, and limiting effects of her flare-ups not credible to the extent the were inconsistent with the objective medical evidence and her activities of daily living.[1]  This credibility determination has substantial evidentiary support in the record, as previously detailed.

The ALJ explicitly considered Plaintiff's rheumatoid arthritis in determining the RFC and consequently limited Plaintiff to light exertional level work with reduced lifting/carrying and prohibiting Plaintiff from climbing ladders, ropes, or scaffolds or being exposed to unprotected heights or hazardous machinery.  Despite Plaintiff's hearing testimony that her rheumatoid arthritis flare-ups would preclude her from working, substantial medical evidence supports the ALJ's RFC determination.

Although the observations of third parties may support a plaintiff's subjective complaints, the letter provided by Plaintiff's daughter generally echoed and corroborated Plaintiff's hearing testimony regarding her subjective allegations regarding her limitations and symptoms and their effects.  The ALJ noted that her daughter's statements were not from accepted medical experts under the Social Security regulations but only lay opinions and observations of Plaintiff's

---

[1] Plaintiff's reliance on the dissenting opinion in Hacker v. Barnhart, 459 F.3d 934 943 (8th Cir. 934) in support of a remand is misplaced and not persuasive.  "Dissenting opinions are often helpful in showing positions that were not adopted by the court.  However, they are not the law." Pioneer Hi-Bred Intern., Inc. v. J.E.M. Ag Supply, Inc., 200 F.3d 1374, 1378 (Fed. Cir. 2000), judgment aff'd, 534 U.S. 124; Allele Biotechnology and Pharmaceuticals, Inc. v. Pfizer, Inc., 2021 WL 1749903, at *4 n.1 (S.D. Cal. 2021) (giving little weight to argument based on a dissenting opinion).  Indeed, the Hacker court did not remand the case but affirmed, finding the Commissioner's decision did not fall outside of the "available zone of choice."  Id. at 936.

functioning. Moreover the daughter had a possible motivation as a family member to help Plaintiff obtain her benefits. See Choate v. Barnhart, 457 F.3d 865, 872 (8th Cir. 2006). ("Corroborating testimony of an individual living with a claimant may be discounted by the ALJ, as that person has a financial interest in the outcome of the case."). The ALJ also permissibly discounted her statements due to a lack of support in the record and instead, relied upon the objective medical evidence. These lay opinions indicate greater functional limitations than Plaintiff had ever reported to her treating doctors and observed by her treating doctors. See Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011) (same evidence that ALJ referred to in discrediting plaintiff's claims also discredited his girlfriend's statements). Therefore, the undersigned finds that the ALJ properly discounted the third-party opinion and accorded it no significant weight.

"As is true in many disability cases, there is no doubt that [Plaintiff] is experiencing pain." Perkins v. Astrue, 648 F.3d 892, 901 (8th Cir. 2011). "While pain may be disabling if it precludes a claimant from engaging in any form of substantial gainful activity, the mere fact that working may cause pain or discomfort does not mandate a finding of disability." Id. at 900. As summarized above, the ALJ acknowledged that Plaintiff suffered pain and symptoms attributable to her conditions of rheumatoid arthritis and right-hand osteoarthritis, however, Plaintiff has not demonstrated that such symptoms preclude her from performing a limited range of light work.

## VIII.  Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001). "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion. Id. Where substantial evidence supports the Commissioner's decision, this Court may not reverse the

decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently.  Id.; see also Igo v. Colvin, 839 F.3d 724, 728 (8th Cir. 2016).  For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.  See Finch, 547 F.3d at 935.  Similarly, the Court cannot say that the ALJ's determinations in this regard fall outside the available "zone of choice," defined by the record in this case.  See Buckner, 646 F.3d at 556.  For the reasons set forth above, the Commissioner's decision denying benefits is affirmed. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner be **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

Dated this 8th day of June, 2022.

/s/ John M. Bodenhausen
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE